FILED

2012 MAR 30  PH 4: 16

U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
YOUNGSTOWN

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN POZSGAI, | ) | |
| | ) | CASE NO. 5:10CV02228 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| RAVENNA CITY SCHOOLS BOARD OF | ) | |
| EDUCATION, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OF OPINION & |
| | ) | ORDER [Resolving ECF Nos. 48; 66] |

## I. INTRODUCTION

Before the Court are Defendants' Ravenna School District Board of Education ("Board"),
Superintendent Timothy Calfee ("Calfee"), and Principal Donna Sell, ("Sell") (collectively
"Defendants") Motion for Judgment on the Pleadings for First Amended Complaint (ECF No.
48) and Motion for Summary Judgment (ECF No. 66).  Plaintiff Kathleen Pozsgai ("Plaintiff")
has filed briefs opposing the motions (ECF Nos. 61; 76), to which Defendants have replied (ECF
Nos. 62; 79).  Having reviewed the motions and corresponding briefs, the Court grants
Defendants' Motion for Summary Judgment and denies as moot Defendants' Motion for
Judgment on the Pleadings for the reasons discussed below.

## II. BACKGROUND

The Board employed Plaintiff as a teacher with a continuing contract from the 1985-1986
school year until June of 2009.  ECF Nos. 66 at 11; 76 at 4.  During the 2004-2005 school year,

(5:10cv02228)

Plaintiff was placed on an unpaid leave of absence for previously taking leaves of absence, for which Plaintiff alleges that she was entitled to take under the Family and Medical Leave Act ("FMLA"). As a result of being placed on unpaid leave, Plaintiff filed a lawsuit against her employer alleging FMLA violations. The parties were able to amicably resolve the lawsuit by entering into a settlement agreement, wherein, Defendants agreed that they would take no adverse employment action toward Plaintiff based upon any absences that were protected by the FMLA, and that there would be no discrimination or retaliation of any kind against Plaintiff for the filing of said lawsuit. ECF Nos. at 46 at 4; 60.

After the settlement agreement, Plaintiff continued to take leaves of absence from work during the 2005-2006 school year and in subsequent school years. ECF Nos. 46 at 7; 66 at 11. In May and June of 2009, Superintendent Calfee and Plaintiff discussed potential reasonable accommodations for Plaintiff's disabilities that were preventing her from working a full-time schedule. ECF No. 67-1 at 29-32. Calfee suggested accommodations such as an assignment to a full-time substitute teaching position at full pay and benefits, or to a half-time teaching position at half pay and full benefits. Plaintiff rejected these accommodations and proposed her own. ECF No. 67-1 at 30.

On June 10, 2009, Calfee notified Plaintiff that her tentative assignment for the 2009-2010 school year would be a full-time substitute teacher position with full pay and benefits, and under the same terms and conditions of employment. ECF Nos. 67-1 at 34; 67-1 at 188. On July 29, 2009, Plaintiff submitted her letter of resignation from employment, effective June 8, 2009. ECF No. 67-1 at 189.

2

(5:10cv02228)

On October 1, 2010, Plaintiff initiated the instant lawsuit against Defendants including Principal Sell and Superintendent Calfee in their individual and official capacities. ECF No. 1. The First Amended Complaint contains the following four causes of action:  (1) Retaliation under the FMLA; (2) Discrimination on the Basis of Disability; (3) Breach of Contract; and (4) Constructive Discharge.  All of the claims are predicated upon Plaintiff's allegation that after the 2005 settlement agreement was entered into, Defendants subjected Plaintiff to a series of retaliatory and discriminatory adverse employment actions. ECF No. 46.

## III. LAW

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(a), which provides:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Court must grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  *See also Van Gorder v. Grand Trunk Western R.R., Inc.*, 509 F.3d 265 (6th Cir. 2007).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence.  *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587, 106 S.

3

(5:10cv02228)

Ct. 1348, 89 L. Ed. 2d 538 (1986); *Pittman v. Cuyahoga Cnty Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). The Court disregards all evidence favorable to the moving party that the jury would not be required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman*, 640 F.3d at 723 (quoting *Anderson*, 477 U.S. at 251-52).

## IV. <u>DISCUSSION</u>

### A. FMLA Retaliation Claim

To establish a *prima facie* case of FMLA retaliation, Plaintiff "must show that (1) she was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action." *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012) (citing *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 556 (6th Cir. 2006)).

In the instant matter, Defendants raise several arguments asserting that Plaintiff has failed

4

(5:10cv02228)

to put forth sufficient evidence establishing a *prima facie* case of retaliation under the FMLA.

ECF No. 66.  The Court will address three of those arguments below:

### 1. Whether Plaintiff failed to establish that she was an eligible employee under the FMLA.

"In analyzing an employee's FMLA claim, the first inquiry is whether the employee was eligible for FMLA leave." *Underwood v. Riverview of Ann Arbor*, 2008 U.S. Dist. Lexis 72597, 5-6 (E.D. Mich. 2008) (citing *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 629 (6th Cir. 2008)).  And, in order to qualify as an eligible employee, one must have "been employed for at least twelve months by the employer with respect to whom leave is requested, and . . . for at least 1,250 hours of service during the twelve-month period immediately preceding the commencement of the leave." *Davis v. Michigan Bell Telephone Co.*, 543 F.3d 345, 347 (6th Cir. 2008) (citing 29 U.S.C. § 2611(2)(A); 29 C.F.R. § 825.110(a)(2)).

In their motion for summary judgment, Defendants first contend that Plaintiff is unable to establish the first element in the *prima facie* case–Plaintiff was engaged in an activity protected by the FMLA–because Plaintiff never worked the required 1250 hours to eligible for FMLA leave.  In support of this assertion, Defendants provide an affidavit from Beatrice Flarida, Assistant Superintendent for the Ravenna School District, indicating that Plaintiff worked less than the requisite 1250 hours for each school year from 2005-2009. ECF Nos. 66 at 14; 66-2.  Although Plaintiff contests Defendants' calculation, by attaching her own affidavit, wherein she alleges that for each school year, she has worked over 1250 hours including "considerable hours outside of the classroom, performing various duties [such as]. . . attending open houses" (ECF Nos. 76 at 8; 76-1), Defendants argue that Plaintiff's contention is without support.  Defendants

5

(5:10cv02228)

highlight that Plaintiff's affidavit amounts to no more than "conclusory statement[s]" and they therefore assert that the "affidavit is insufficient to raise a genuine dispute regarding the material fact of whether she worked enough to be an eligible employee." ECF No. 79 at 6-7.

Defendants' position is not without legal support. There is at least one district court in this Circuit to hold that a plaintiff's bare assertion that an employer's calculated hours are inaccurate–in lieu of a claim identifying "some specific dates and hours on those dates where the [employer's] time tracking mistakes occurred" is insufficient to establish a genuine issue for trial regarding FMLA eligibility. *See Underwood v. Riverview of Ann Arbor*, 2008 U.S. Dist. LEXIS 72597, 9-10 (E.D. Mich. 2008).

However, the Court finds Defendants' argument problematic because it seemingly places the burden on Plaintiff to establish that she is an eligible employee under the statute, which may not be appropriate in the instant case. In *Staunch v. Cont'l Airlines, Inc.*, 511 F.3d 625, 630 (6th Cir. 2008), the Sixth Circuit explained that "if the 'employer does not maintain an accurate record of hours worked by an employee . . . the employer has the burden of showing that the employee has not worked the requisite hours.'" *Staunch*, 511 F.3d at 630 (6th Cir. 2008) (quoting 29 C.F.R. § 825.110(c)). The *Staunch* Court further held that an employee's "undated [and] generalized" averment that the employee had met requisite 1250 hours was insufficient to raise a genuine issue concerning FMLA eligibility. But the Court reached this decision, only after first determining whether the employer maintained an accurate record of hours worked, which established which party bore the burden of proving eligibility status. *Staunch*, 511 F.3d at 630.

6

(5:10cv02228)

Thus, in light of the Sixth Circuit's analysis in *Staunch*, prior to resolving whether Plaintiff's affidavit raises a genuine issue of material fact concerning Plaintiff's eligibility, the Court would have to first determine whether the Board maintained an accurate record of Plaintiff's hours in order to decide whether Plaintiff or Defendants bears the burden of proof. Unfortunately for Defendants, there is not sufficient evidence on the record to undertake this inquiry. Before the Court is only Plaintiff's averment that Defendants' calculation fails to accurately reflect her hours worked. Specifically, Defendants have not provided adequate information from establishing or explaining that the hours detailed in the submitted (Flarida's) affidavit includes additional hours that Plaintiff may have been required to work. Thus, viewing the facts, as they stand and in favor of the non-moving party, they seemingly support that Defendants are not entitled to prevail on this claim. Ultimately, the Court need not take a more definitive stance on this issue, given the Court's finding, detailed below, that Plaintiff has failed to establish required elements of the FMLA *prima facie* case. Accordingly, Plaintiff's FMLA claim fails for the reasons detailed below.

### 2. Whether Plaintiff failed to establish that Defendants were aware that any of her absences were FMLA qualified absences.

Defendants' attack the second prong of Plaintiff's *prima facie* case. They contend that Plaintiff has failed to present evidence that Defendants knew that Plaintiff was exercising her right to take FMLA leave. In support of this argument, Defendants primarily rely upon Plaintiff's own testimony admitting that she never told anyone at the Ravenna School District that any of her absences were related to a serious condition and were, therefore, FMLA-qualifying. ECF Nos. 66 at 15; 67-1 at 44.

7

(5:10cv02228)

Despite Plaintiff's seemingly damaging testimony, Plaintiff contends that a letter dated April 19, 2005 establishes Defendants' awareness that her various absences were FMLA qualifying because, in that letter,[1] "Defendants acknowledged the existence of Plaintiff's serious health conditions and that she qualified for rights under the FMLA." ECF No. 76 at 10. Although Plaintiff concedes that she did not specifically inform Defendants that her absences after the settlement agreement were for a serious health condition, she argues that she was absolved of this responsibility, based upon FMLA regulations explaining that when an employer feels that it lacks sufficient information to determine whether the employee's reasons for requesting leave are encompassed by the FMLA, the employer should further examine whether the leave is potentially FMLA qualifying.[2] After highlighting evidence on the record demonstrating that the Defendants never inquired into whether Plaintiff's absences qualified for FMLA, Plaintiff asserts that there is a genuine issue of material fact regarding this precise issue. She, therefore, contends that summary judgment on this claim must be denied. ECF No. 76 at 10-11.

The Court finds Plaintiff's argument unavailing.  Her argument is predicated upon a

---

[1] Although Plaintiff avers that the April 19, 2005 letter is attached to her brief, the Court was unable to locate the document.

[2] Plaintiff relies upon 29 C.F.R. § 825.208(a) quoted in *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 935 (6th Cir. 2000). That provision has been removed from the FMLA regulations. However, there are other provisions in the regulations that contain similar language. *See* 29 C.F.R. § 825.302(c) ("[T]he the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken.").

(5:10cv02228)

faulty understanding of the law.
Even though the FMLA regulations provide that an employer should inquire further, if it is necessary to have more information about whether FMLA leave is being sought by the employee, the employer's obligation of further inquiry is only triggered after the employee alerts the employer of the need for potentially qualifying FMLA leave. *See Righi v. SMC Corp. of Am., 632 F.3d 404, 409-10 (7th Cir. 2011)* (explaining the burden shifting framework of FMLA involving notice); *see also Rodriguez v. Smithfield Packing Co., 545 F. Supp. 2d 508, 519-20 (D. Md. 2008)* (stating that an "employer's duty of further inquiry is not triggered unless the employer, under the circumstances, could reasonably be expected to conclude a plaintiff's absence might have qualified for treatment under the FMLA); *Gay v. Gilman Paper Co., 125 F.3d 1432 (11th Cir. 1997).*

Additionally, by relying solely upon the April 19, 2005 letter, Plaintiff seems to suggest that once an employee tells an employer that she has a serious health condition, the employer is on notice, in perpetuity, that any subsequent leave, even years later, is for the serious health condition and therefore FMLA-qualifying. This is not the case. Although Plaintiff is correct in noting that an employee need not expressly assert FMLA rights or even mention the FMLA,[3] an employee is still obligated to provide reasonably adequate notice to apprise the employer that absences occurring subsequent to established FMLA covered absences, are related to a serious health condition and are, therefore, likely to be wise covered under the Act.[4] *See Gipson v.*

---

[3] *See Hammon v. DHL Airways, Inc., 165 F.3d 441, 451 (6th Cir. 1999)*

[4] *See* 29 C.F.R. § 825.302(c) ("When an employee seeks leave due to a FMLA-qualifying reason, for which the employer has previously provided FMLA-protected leave, the employee

9

(5:10cv02228)

*Vought Aircraft Indus., Inc.,* 387 Fed. Appx. 548, 556 (6th Cir. 2010) (rejecting argument that the employer had knowledge that employee's subsequent absences were related to serious health condition because the employer was aware that the employee's prior absences were related to a serious health condition); *see also Brenneman v. MedCentral Health Sys.,* 366 F.3d 412, 424 n.9 (6th Cir. 2004) (rejecting argument that, because "defendant knew the plaintiff has diabetes and that plaintiff had FMLA-qualifying, diabetes-related absences [in the past]," material issue of fact existed as to whether employer had sufficient notice that later absence was also diabetes-related, where plaintiff stated only that he "wasn't doing well" that day).

Therefore, even if Defendants were aware, in April of 2005, that Plaintiff had a serious health condition, the FMLA regulations obligated Plaintiff to provide some sort of notice to Defendants informing them that subsequent leave was for Plaintiff's serious health condition. That Plaintiff did not tell this to Defendants, in light of her own testimony, is undisputed. Moreover, the record lacks any indication that Defendants were otherwise aware that Plaintiffs subsequent absences were related to a serious health condition. Accordingly, the Court finds that Plaintiff has failed to present evidence satisfying the second element of a *prima facie* case for retaliation under the FMLA. In the absence of genuine issues of material fact, failure to establish an element of a claim entitles Defendants to summary judgment.

### 3. Whether Plaintiff failed to establish that Defendants took an adverse employment action against Plaintiff.

Defendants additionally argue that Plaintiff's *prima facie* case fails because there lacks

---

must specifically reference the qualifying reason for leave or the need for FMLA leave."); *see also* 29 C.F.R. § 825.303(b) ("Calling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act.").

(5:10cv02228)

evidence that she suffered an adverse action.  ECF No. 66 at 16-22.  The Court agrees.

The Sixth Circuit defines an adverse employment action as materially adverse change in the terms and conditions of a plaintiff's employment." *Smith v. City of Salem*, 378 F.3d 566, 575-76 (6th Cir. 2004).  Such an action is typically characterized "by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Momah v. Dominguez*, 239 F. Appx 114, 123 (6th Cir. 2007) (citing *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999).  "A change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities, [thus, the Sixth Circuit has] held that *de minimis* employment actions, such as reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." *Broska v. Henderson*, 70 Fed. Appx. 262, 267 (6th Cir. 2003) (internal quotations and citations omitted).

In the instant case, Plaintiff's FMLA Retaliation claim is predicated upon the following alleged adverse employment actions:  (1) Defendants gave Plaintiff additional work to make sure Plaintiff no longer had "free time" during the day; (2) Plaintiff's class times were changed and her driving times to the locations where she taught were increased; (3) Plaintiff was denied the ability to attend a State physical educational conference; (4) Defendants Calfee and Sell "made inquiry of [a] promoter of [an educational workshop] as to whether Plaintiff had attended the workshop as planned; (5) Plaintiff received poor performance evaluations; (6) Calfee threatened Plaintiff by stating, "if you think you can't be touched, you can"; (7) Calfee suggested that Plaintiff retire or go on disability retirement and questioned whether Plaintiff had a medical

(5:10cv02228)

condition; (8) Calfee informed Plaintiff that she would be tentatively assigned to a full-time

substitute teaching position for the following school year, and suggested to Plaintiff that her

hours be reduced to a half-day schedule; (9) Plaintiff was constructively discharged from her

employment. ECF No. 46.

### a. (1) Additional Duties and (2) Schedule Change

Plaintiff's allegation that she was given additional duties at work rather than be allowed

"free time" and that she was subjected to a different work schedule increasing her travel time are

not considered materially adverse because there lacks evidence indicating that these were

"tangible employment actions that constitute[d] a significant change in employment status."

*Plautz v. Potter*, 156 Fed. Appx. 812, 817 (6th Cir. 2005) (internal quotations and citations

omitted). Defendants proffered undisputed evidence indicating that in spite of being given

additional work, Plaintiff's assigned duties and teaching assignments were always within the

contracted school day[5] (ECF Nos. 66-3 to 66-8); and that, in spite of having to work a different

schedule involving different work locations, the farthest Plaintiff had to travel in between schools

was 3.5 miles (ECF No. 66-2). The Sixth Circuit has made clear that "even if one's job becomes

significantly more difficult" as a result of an employer's action, this fact alone would be

insufficient to meet the adverse employment action threshold. *Broska v. Henderson*, 70 Fed.

Appx. 262, 267 (6th Cir. 2003). Thus, while the Court acknowledges that Plaintiff was no doubt

---

[5] Sell's affidavit indicates that in the 2004-2005 school year, Plaintiff had 80 minutes of "free time" and during the 2006-2006 school year, Plaintiff had 85 minutes of "free time." Plaintiff's "free time" was decreased the following year to 75 minutes. Plaintiff's free time was subsequently increased to 170 minutes and 125 minutes for the 2007-2008 and 2008-2009 school year, respectively. ECF No. 66-3 at 3-4.

(5:10cv02228)

inconvenienced by her employer's actions, which resulted in additional travel time for Plaintiff

and decreased Plaintiff's "free time," the Court finds that such annoyances are insufficient to

make a showing that Defendants' conduct constituted an adverse employment action. *See Monak

v. Ford Motor Co.*, 95 Fed. Appx. 758, 765 (6th Cir. 2004) (finding plaintiff failed to

demonstrate an adverse employment action partly because there was no proof that the changes

involved a detrimental change in "on-the-job hours"); *Johnson v. Miles*, 2011 U.S. Dist. Lexis

99578 (E.D. Ky. 2011) ("This court has previously held that a lateral transfer, with no change in

duties and no loss in pay or benefits, but which required a plaintiff to drive an additional twenty

minutes to work does not constitute an adverse employment action as a matter of law.").

### b. (3) Refusal to Attend Conference; (4) Inquiry into Attendance at Workshop; (5) Negative Performance Evaluations

Plaintiff's argument that Defendants' refusal to allow her to attend a conference, inquiry

into whether she attended a workshop, and negative evaluation of her performance all equated to

adverse employment actions fails on the same grounds discussed above. The alleged incidents

can only be categorized as *de minimus* actions, and are therefore are not sufficient to qualify as

adverse employment actions. *See Weigold v. ABC Appliance Co.*, 105 F. App'x 702, 708 (6th

Cir. 2004) (indicating that negative criticism or performance evaluation unaccompanied

materially adverse change in the terms and conditions of employment does not constitute adverse

employment action); *Jacklyn v. Schering-Plough HealthCare Prod.*, 176 F.3d 921, 930 (6th Cir.

1999) (holding that "rejecting computer expenses that previously had been approved, were not

materially adverse employment actions").

13

(5:10cv02228)

### c. (6) Threat

Similarly, Calfee's alleged "threat" suggesting that Plaintiff would be terminated cannot be said to be a material adverse change in the terms and conditions of Plaintiff's employment, in light of Sixth Circuit precedent stating that "it is settled [law] in this circuit that a threat to discharge is not an adverse employment action." *Plautz*, 156 Fed. Appx. at 817 (citing *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)).

### d. (7) Inquiry into Medical Condition and Disability Retirement Suggestion

With regard to Calfee's inquiry into whether Plaintiff had a medical condition and his suggestion that Plaintiff should examine disability retirement, Plaintiff testified that Calfee's discussion did not cause any change to Plaintiff's working conditions. ECF No. 67-1 at 34-35. Thus, the Court need not look beyond Plaintiff's own testimony to conclude that Calfee's actions do not amount to adverse employment actions.

### e. (8) Tentative Reassignment to Substitute Teaching Position

Moreover, according to Sixth Circuit precedent, an "attempt" by an employer to change an employee's assignment, or a proposed change in assignment that is never implemented, does not amount to an adverse action. *See Scott v. Metro. Health Corp.*, 234 Fed. Appx. 341, 348 (6th Cir. 2007) ("The law in our circuit is that actions that are not implemented are not adverse employment actions."). Accordingly, Calfee's tentative reassignment of Plaintiff to a substitute teaching position cannot be classified as such. *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) ("Graham's proposals to reduce Mitchell's pay, alter his employment status, and reassign him . . . were never implemented and therefore not adverse employment actions.").

14

(5:10cv02228)

### f. (9) Constructive Discharge

Although constructive discharge can constitute an adverse employment action, the Court finds that Plaintiff has failed to produce sufficient evidence to raise a genuine issue of material fact as to whether her resignation could be classified as such.

"To demonstrate a constructive discharge, Plaintiff must present evidence to show that 1) the employer []deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit." *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005) (*Logan v. Denny's*, 259 F.3d 558, 568-69 (6th Cir. 2001)).

In support of her claim, Plaintiff relies on *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446 (6th Cir. 2005), wherein the Sixth Court concluded "that a threat of demotion coupled with other factors is sufficient to establish constructive discharge." *Id.* at 451. Plaintiff argues that Defendant Calfee notifying Plaintiff of her assignment to a substitution teaching position constitutes a threat of demotion. She further contends that when this action and the remaining alleged adverse employment actions are viewed in the aggregate, a reasonable juror could conclude that she was constructively discharged. ECF No. 76 at 14-16. The Court disagrees.

Even if the Court were to assume that Calfee's notification to Plaintiff that she would be reassigned amounted to a "threat of demotion," Plaintiff's claim would still fail because the record lacks "other factors sufficient to establish constructive discharge." *Saroli*, 405 F.3d at 451. Specifically, Plaintiff has failed to present sufficient evidence that Defendants acted with the intent to force Plaintiff to quit her job. Particularly problematic for Plaintiff is that Calfee's

15

(5:10cv02228)

suggestions to Plaintiff regarding transferring to different positions, including those with reduced

work schedules and, ultimately, Calfee's notification to Plaintiff that she would, in fact, be

reassigned to a substitute teaching position, were all, arguably, made in the context of her

employer's attempt to reasonably accommodate Plaintiff's health issues.  ECF Nos. 67-1 at 34-3;

67-1 at 187-190; 66-1.  The record indicates that Calfee met with Plaintiff on at least three

different occasions to discuss what reasonable accommodations, if any, were needed for

Plaintiff's health conditions.  ECF No. 67-1 at 187-190.  Plaintiff attests to Defendants attempts

to accommodate her when she testified that that Calfee's proposals were made pursuant to the

Americans with Disabilities Act.  ECF No. 67-1 at 29.  After Plaintiff rejected the proposed

reasonable accommodations, Calfee informed Plaintiff that the Board would exercise its

authority under the collective bargaining agreement to transfer Plaintiff to the full-time substitute

teaching position for the following school year, because of Plaintiff's "worsening attendance"

and Plaintiff's inability "to perform certain essential functions of her position."  ECF No. 67-1 at

187.  He further indicated that, in the new position, Plaintiff would "receive the same salary

benefits, terms and conditions as [she would have received in her] previous assignment" and also

informed Plaintiff that if she were still dissatisfied with this arrangement she could contact him

for further discussion.  ECF No. 67-1 at 188.

Thus, while Plaintiff categorizes the aforementioned actions as adverse employment

actions, Calfee's conduct strongly indicates Defendants' intent to maintain an employment

relationship with Plaintiff–not, as she alleges, force Plaintiff to quit. *See Quinn v. St. Louis*

*County*, 653 F.3d 745, 752-753 (8th Cir. 2011) (finding an employer's willingness to engage in

the reasonable accommodation process with plaintiff undercuts constructive discharge claim).

(5:10cv02228)

Moreover, the alleged adverse employment actions, even when viewed in the aggregate, cannot be said to have created an intolerable working environment. Based upon Plaintiff's allegations contained in the amended complaint, it appears that Defendants' purported conduct occurred over a four to five-year span. ECF No. 46. The efforts made to accommodate Plaintiff emphasizes the Court's previous determination that the complained of actions are *de minimus* and not likely to inspire a reasonable factfinder could conclude that Defendants subjected Plaintiff to unbearable working conditions with the intention that Plaintiff would resign. Plaintiff, therefore, cannot use her claim of constructive discharge to establish that she was subjected to an adverse employment action. Accordingly, the Court finds that Plaintiff has not established the third prong of a *prima facie* case for retaliation under the FMLA. Having failed to establish an FMLA *prima facie* case, the Court finds that Defendants are entitled to summary judgment on the FMLA claim.[6]

## B. Disability Discrimination Claim

In the second count of her amended complaint, Plaintiff avers that Defendants' conduct also amounted to disability discrimination under Ohio law. ECF No. 46 at 8-9.

To establish a *prima facie* case of disability discrimination under Ohio law, a plaintiff must demonstrate that: (1) the plaintiff had a disability, (2) the defendant took an adverse employment action, at least in part, because the plaintiff had the disability, and (3) the plaintiff,

---

[6] Plaintiff sued Defendants Sell and Calfee in their official and individual capacities. Defendants correctly note that according to Sixth Circuit precedent, the FMLA does not impose personal liability against employees or officials of a public agencies. *See Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003) (stating that "the FMLA's individual liability provision does not extend to public agencies"). Therefore, Plaintiff's FMLA claims against Calfee and Sell in their individual capacities are dismissed on this ground as well.

(5:10cv02228)

while having a disability, could safely and substantially perform the essential functions of the job

in question. *See Wallace v. Mantych Metalworking*, 189 Ohio App. 3d 25, 2010 Ohio 3765, 937

N.E.2d 177, 183 (Ohio Ct. App. 2010).

Defendants argue that they are entitled to summary judgment on Plaintiff's disability

claim because Plaintiff has not satisfied the second prong of her *prima facie* case. Defendants

stress that the adverse employment actions alleged to have been taken in the discrimination claim

are identical to those alleged in Plaintiff's FMLA claim. ECF No. 76 at 19. Defendants,

therefore, repeat the same arguments asserted in their challenge to the FMLA claim: Plaintiff has

failed to establish that she suffered an adverse employment action. ECF No. 79 at 15-16.

The standard in evaluating whether Plaintiff has made a showing of an "adverse

employment action," under the second element of the instant claim is the same one used to

evaluate an FMLA claim. *See Anderson v. Avon Prods.*, 340 Fed. Appx. 284, 288 (6th Cir.

2009) (using one standard to evaluate both FMLA and ADA claims). Thus, in light of the

Court's previous determination that Plaintiff has failed to raise a genuine issue of material fact on

the adverse employment action issue, the Court finds that Plaintiff has not established the second

prong of her *prima facie* case for disability discrimination. The instant claim fails as a matter of

law and Defendants are, therefore, entitled to summary judgment. *See Kocsis v. Multi-Care*

*Mgmt.*, 97 F.3d 876, 886 (6th Cir. 1996) (affirming district court's decision granting summary

judgment for defendant on a disability discrimination claim because the defendant's action did

not constitute an adverse employment action).

**C. Breach of Contract Claim**

Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a

18

(5:10cv02228)

valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff. *See Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002). To prove the existence of a contract, the plaintiff must prove all of the essential elements of a contract. *MMK Group, LLC v. SheShells Co., LLC*, 591 F. Supp.2d 944, 963 (N.D. Ohio 2008).

In the third count in the amended complaint, Plaintiff asserts a claim for breach of contract. ECF No. 46 at 9-10. The contract alleged to have been breached is the 2005 settlement agreement entered into between Plaintiff and the Board. Pursuant to the agreement, the Board agreed that they would not take any "adverse employment action toward [Plaintiff] based upon any absences that are protected by the FMLA" and would also not discriminate or retaliate against Plaintiff because she filed the 2005 lawsuit. ECF No. 60 at 3. Plaintiff alleges, however, that the "Board acting though [] Calfee, took adverse employment action toward [her], in violation of the prior settlement agreement and further discriminated and retaliated against [her] because of the prior lawsuit." ECF No. 46 at 11.

The Court finds that Plaintiff has failed to put forth sufficient evidence establishing that Defendants breached the settlement agreement. Plaintiff alleges that Defendants breached the agreement based upon two separate theories of retaliation, which are both predicated upon the same alleged adverse actions, discussed *supra*. The first theory is that Defendants breached by retaliating in violation of the FMLA. The second theory is that Defendants breached by retaliating for Plaintiff's filing of the 2005 lawsuit.

Both theories lack merit. With regard to the first theory, the Court has already determined that Plaintiff's claim of retaliation under the FMLA fails; therefore, her breach of

19

(5:10cv02228)

contract claim predicated upon the same claim must suffer the same fate.

Concerning the second theory, the Court finds that Plaintiff has failed to sufficiently establish that Defendants alleged actions were in retaliation for the lawsuit. Again, the conduct Plaintiff complains of, the alleged adverse employment actions, occurred over a four to five year period. Given the span of time over which the alleged adverse actions occurred and the lack of any other substantiated evidence alluding to a connection between the conduct and the filing of the lawsuit,[7] a reasonable factfinder could not conclude that Defendants alleged actions were in response to Plaintiff's lawsuit.

Accordingly, the Court finds that Plaintiff has not established a *prima facie* case for breach of contract. Defendants are therefore entitled to summary judgment regarding this claim.

### D. Constructive Discharge Claim

In Plaintiff's final count in the amended complaint, she asserts a cause of action for "constructive discharge." ECF No. 46 at 11. Defendants aver that they are entitled to summary judgment on this claim because "constructive discharge" is not an actual cause of action under Ohio law. ECF No. 66 at 30.

The Court agrees. At least two district courts in this Circuit have concluded that "[c]onstructive discharge is not itself a cause of action, but rather a means of proving the element

---

[7] Defendants highlight in their brief, the lack of evidence pointing to a causal connection between the filing of the lawsuit and the various alleged adverse employment actions. ECF No. 66 at 30. Plaintiff, however, makes no statement outside of her amended complaint regarding this issue, nor does she point to any evidence in the record establishing a causal link to respond Defendants' averment. Thus, the Court finds that Plaintiff has abandoned her second theory concerning Defendants' breach. Accordingly, the Court finds that Defendants are entitled to summary judgment for this reason as well.

(5:10cv02228)

of an adverse employment action where the employee resigns instead of being fired." *Talbot v. Cuyahoga Cnty. Bd. of MR/DD*, 2009 U.S. Dist. Lexis 8780, *22 (N.D. Ohio 2009) (quoting *Fernandez v. City of Pataskala*, 2006 U.S. Dist. Lexis 82136 (S.D. Ohio 2006)).

. Plaintiff points the Court to two cases in State court, where constructive discharge is seemingly evaluated by the State court as a separate cause of action, as evidence that her claim should not be dismissed. *See Baddour v. Rehab. Servs. Comm'n*, 2004 Ohio 3812 (Ohio Ct. Cl. 2004); *Mowery v. City of Columbus*, 2006 Ohio 1153 (Ohio Ct. App. 2006). However, a thorough reading of those decisions, including an analysis of the case law cited within the decisions reveal that neither case can be said to stand for the proposition that constructive discharge provides a standalone entitlement for relief. Accordingly, the Court finds that Plaintiff's final claim fails and Defendant are therefore entitled to prevail as a matter of law.

## V. **CONCLUSION**

For the reasons discussed above, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claims alleged in the amended complaint. Accordingly, Defendants' Motion for Summary Judgment (ECF No. 66) is hereby granted. Defendants' Motion for Judgment on the Pleadings is denied (ECF No. 48) as moot. This case is hereby removed from the Court's docket.

IT IS SO ORDERED.

March 30, 2012

Date

Benita Y. Pearson
United States District Judge

21